UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------------------X
MUHAMET VINCA,                                    Case No.

                Plaintiff,

    -against-                                               **COMPLAINT**

MONDELEZ INTERNATIONAL, INC.,
MONDELEZ GLOBAL, LLC,
JOHN AND JANE DOES 1-10, individually            **Trial by Jury Demanded**
and in their official capacities and XYZ CORP. 1-10,

                Defendants.
-------------------------------------------------------------------X

Plaintiff, Muhamet Vinca ("Plaintiff" or "Vinca"), by his attorneys the Law Offices of Rudy A. Dermesropian, LLC, complaining of defendants the Mondelez International, Inc. ("Mondelez International"), Mondelez Global, LLC ("Mondelez USA") ("Mondelez International" and "Mondelez USA" collectively are referred to as "Mondelez"), John and Jane Does 1-10, individually and in their official capacities, and XYZ Corp. 1-10 (collectively referred to as "Defendants"), alleges as follows:

1. This lawsuit seeks to remedy Defendants' intentional creation of a hostile work environment, unlawful discrimination, harassment, retaliation and unlawful adverse actions towards the Plaintiff based on his religion in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq*. ("Title VII") and in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5-1 to 10:5-49.

## PARTIES

2. At all relevant times herein, Plaintiff, a Muslim man, was a Mixer at Defendant Mondelez in Fair Lawn, New Jersey.

3. Plaintiff is an "employee" and a "person" within the meaning of Title VII and the NJLAD.

4. Upon information and belief, Mondelez International is the parent company of Mondelez USA.

5. Mondelez International conducts business in the United States through their New Jersey office located at 22-11 RT 208 N, Fair Lawn, NJ 07410.

6. Defendant Mondelez USA is located at 22-11 RT 208 N, Fair Lawn, NJ 07410.

7. Defendant Mondelez is an "employer" within the meaning of Title VII because it had more than 15 employees, and an "employer" and "person" within the meaning of the NJLAD.

8. Defendants John and Jane Does 1–10 are natural persons whose true identities are not yet known to Plaintiff and are partners, shareholders, principals, employees, agents or persons otherwise associated with one or more of the other Defendants, or were otherwise in positions which enabled them to commit, or to aid and abet in the commission of, the wrongful acts against Plaintiff set forth herein.

9. Defendants XYZ Corp. 1–10 are additional entities whose true identities are not yet known to Plaintiff, which are owned or operated by, affiliated with, owned and/or managed by or for the benefit of one or more other Defendants, or any combination of any or all of them.

10. In committing the wrongful conduct described in this action and obtaining the benefits therefrom to Plaintiff's loss, cost, damage and detriment, one or more of the Defendants acted and operated interchangeably as principals, agents, instrumentalities and/or *alter egos* of one or more of them and/or each other.

11.     Each John and Jane Doe defendant is an "employee" and a "person" within the meaning of Title VII and the NJLAD, and a person of authority that exercised control over Plaintiff's employment.

12.     Each XYZ Corp. defendant is an "employer" within the meaning of Title VII because it had more than 15 employees, and an "employer" and "person" within the meaning of the NJLAD.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction with respect to Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 & 1343, 42 U.S.C. §§2000e *et seq*.

14.     The unlawful employment practices were committed in Bergen County, District of New Jersey.

15.     This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States.

16.     This Court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367(a). The New Jersey claims are inexorably related to, arise out of the same operative facts and circumstances as, and are a necessary, integral part of the federal law claims, such that the federal claims and New Jersey state law claims form part of the same case or controversy.

17.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) & (2).

18.     All conditions precedent to filing suit have been satisfied. On July 31, 2020, Plaintiff filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission, Newark Area Office ("EEOC") [Charge No. 524-2020-01476]. On or about November 17, 2020, the EEOC issued Plaintiff a Right to Sue Notice. This action was filed within

90 days of Plaintiff's receipt of the Notice of Right to Sue. Annexed hereto as <u>Exhibit A</u>, and incorporated in this Complaint by reference, is a copy of Plaintiff's Right to Sue Notice.

## **FACTS**

19. At all relevant times herein, Plaintiff, a Muslim man, was employed as a Mixer at Mondelez from March 15, 2010 until his unlawful termination on October 16, 2019.

20. As a Mixer, Plaintiff's duties and responsibilities included but were not limited to, managing, maintaining and troubleshooting the mixing machine at the factory, documenting and inspecting raw materials, loading and unloading approximately numerous batches of dough on belt and tub each shift, inspecting dough temperature and quality, inspecting pressure of dough to ensure top quality assurance as per company and regulatory standards, preparing and heavy lifting of raw materials, observing safety protocols on the production floor as per company and OSHA requirements and regulations, maintaining attention to detail by loading proper ingredients in mixing machine as required, and documenting and verifying paperwork as per company and audit requirements.

21. Throughout his employment, Plaintiff did not have any negative performance reviews or reprimands, and his work performance was satisfactory.

22. Prior to September 11, 2018, Plaintiff received quarterly perfect attendance bonuses, Mixing Lead DeCasual Faircloth recognitions, and wrote Behavior Observation Standard forms regarding his satisfactory work performance.

23. Plaintiff was also praised by the Safety Department for writing the most Behavior Observation Standard forms.

24. However, on September 11, 2018, on the anniversary of the September 11, 2001 terrorist attacks on the United States, one of Defendant's managers, Dawn Sprague, falsely accused Plaintiff of allegedly harassing a non-Muslim coworker.

25. That fabricated and false accusation was condoned and supported by Defendant Mondelez, that was aware, condoned and supported the discrimination and harassment that Plaintiff was subjected to.

26. Plaintiff was also issued a fabricated and false warning and write-up as a result of those accusations.

27. Those accusations against Plaintiff were baseless and false.

28. In fact, Defendant Mondelez did not allow Plaintiff an opportunity to respond to these fabricated accusations and instead issued took adverse action against him by writing him up for something he never did.

29. In addition, Defendant Mondelez did not provide Plaintiff or his union with any corroborating evidence showing that he engaged in any form of harassing conduct against another employee.

30. Upon information and belief, no other non-Muslim employee was falsely accused of harassment or any other form of wrongdoing and written up without evidence.

31. As a result of this baseless accusation, Defendant Mondelez placed Plaintiff on a compliance plan, whereby it directed him to refrain from engaging in other wrongful conduct.

32. However, despite conceding that Plaintiff did comply with all of Mondelez's directives and guidelines, Defendant nonetheless issued Plaintiff another disciplinary write-up.

33. On February 6, 2019, as a continuous form of harassment and discrimination, Defendant Mondelez issued Plaintiff another written disciplinary warning extending the

unfounded sanctions he received on September 11, 2018, despite his compliance with the company's directive, which was conceded to by the company in writing.

34. On August 24, 2019, Plaintiff engaged in a protected activity by submitting a written complaint stating, in part, that Defendant's actions are "offensive based on my religious beliefs."

35. However, Defendant was not deterred from its continuous harassing and discriminatory actions, and in fact, retaliated against Plaintiff for complaining of "religious" discrimination and disparate treatment on August 24, 2019.

36. On September 19, 2019, while Plaintiff was on a break, a female co-worker approached Plaintiff in the mixing break room, looked over at a book that he was reading, and asked him what book he was reading. This brief conversation took place in the presence of other co-workers and, upon information and belief, there was a surveillance camera outside the break room.

37. However, on September 20, 2019, Defendant Mondelez again falsely accused Plaintiff of sexual harassment and sexual assault against the non-Muslim female co-worker who approached him.

38. It is unconceivable to believe that Plaintiff would have engaged in such conduct in the presence of several other coworkers.

39. Even more significant, text messages from the female co-worker who Plaintiff allegedly sexually harassed state and confirm that "what they are saying are straight up lies."

40. It is therefore without a doubt that Defendant's accusations against Plaintiff were false, fabricated, and intentionally made in order to retaliate against Plaintiff for engaging in a protected activity on August 24, 2019, and to further harass and discriminate against him.

41. On the same day of September 20, 2019, when Plaintiff was notified on those false accusations, he inquired from the Human Resources what the basis of those accusations is and whether they had any proof to support their false accusations.

42. In response, and to avoid responding to Plaintiff's inquiries, Defendant Mondelez had Plaintiff escorted out of the building by security and humiliated and embarrassed in front of his peers simply for asking questions from Human Resources.

43. No other non-Muslim employee was escorted out by security for asking questions to Human Resources pertaining to fabricated accusations against him or her.

44. On September 25, 2019, Plaintiff verbally complained of the disparate treatment he was subjected to on the basis of his religion and of the retaliatory actions that Defendant engaged in.

45. Also on September 25, 2019, Plaintiff submitted another complaint by fax complaining, in part, for being "suspended based on a false allegation of sexual harassment [and] sexual assault."

46. However, instead of conducting a proper investigation in this matter, Defendant Mondelez terminated Plaintiff on October 16, 2019, despite having text messages from the alleged victim stating that "what they are saying are straight up lies."

47. Plaintiff's termination was in retaliation for engaging in protected activities and in furtherance of Defendant's discriminatory actions.

48. In sharp contrast with how Plaintiff was adversely treated because of his religion, other non-Muslim employees have been found to engage in wrongful conduct, including certain serious violations, but were treated more favorably. For example:

a. Upon information and belief, Justin Colucci, a non-Muslim employee, hit a female employee Monica from the Packing Department. There were witnesses who witnessed the incident and the police was involved. However, that non-Muslim employee only received a 10-day suspension.

b. Upon information and belief, on July 12, 2019, Stephanie from the Packing Department, a non-Muslim employee, scratched Brian Jimenez's arm, aggressively screamed at him, and forcibly grabbed his arm. Brian reported this incident right away and filled and signed an incident/witness report pursuant to Mondelez's policies. As a result of this incident, Stephanie was only suspended for 10 days.

c. Upon information and belief, Bosina Pelinski (a/k/a Beverly Pelinski) and Jolanta Wilka, non-Muslim employees, both of which were from the EHS Department, engaged in a physical altercation and pushed each other and only received a 1 day suspension each. Upon information and belief, Bosina Pelinsky had a prior record of on the job violence.

d. Upon information and belief, John Mann, a non-Muslim employee, chased Elaine from the Warehouse Department. This was witnessed by another supervisor at the company. As a result of this incident, he only received counseling.

e. Upon information and belief, Jusytina Bigos went to Human Resources and accused Gino Popolizio of sexual harassment and Gino Popolizio, a non-Muslim employee, was not terminated as Plaintiff was.

f. Upon information and belief, Elaine from the Warehouse Department went to Matt Chick, a Warehouse Supervisor, and accused Rob Marche, a non-Muslim employee, of sexual harassment. Instead of reprimanding, suspending or

terminating Rob Marche as Plaintiff was, Matt Chick simply had a green room meeting with everyone in the warehouse department and did not take any action against Rob Marche.

g. Upon information and belief, Mike Smith, a non-Muslim employee, calls Jusytina a "bitch" but does not get disciplined for it.

h. Upon information and belief, a non-Muslim female employee [current name unknown] tells another employee in the Packing Department on the 3rd shift that he has to work with a bunch of "Niggers." That racist comment was reported to Mondelez. As a result, the non-Muslim female employee only received a 1-day suspension.

i. Upon information and belief, in or around April or May 2018, non-Muslim employee Anthony Campbell from the Mixing Department, pushed a platform by the mixer line after getting into an argument with DeCasual Faircloth, the Lead Mixer. The following day after speaking with Mixing Supervisor Mike Gooden, as witnessed by former Mixing Supervisor Malick Camara and shop stewards James Clark and James Goodman, Anthony Campbell physically charged at DeCasual Faircloth. Neither of those employees was suspended or terminated as Plaintiff was.

j. Upon information and belief, Tommy Jacobs, a non-Muslim employee, calls Elaine a "psychotic bitch" in front of a supervisor. The supervisor does not take any disciplinary action against either employee.

k. Upon information and belief, two non-Muslim female employees [current names unknown] who, upon information and belief, engaged in a physical altercation in the parking lot on the 3rd shift, were not terminated.

    l. Upon information and belief, in 2018, Marcy Cruz reported to security that she was being harassed by Terrence Greene, a non-Muslim employee. The Security Department reported the incident to Human Resources, but neither employee was terminated as a result.

    m. Upon information and belief, a non-Muslim female employee, Alicia, was suspended for only one (1) day for threatening another non-Muslim female employee, Shantae. That incident was witnessed by another non-Muslim female employee, Gail.

    n. Upon information and belief, Alicia was also accused of stealing hair nets from the Company. However, Defendant Mondelez did not suspend or terminated Alicia for stealing company property.

49. As a result of Defendant's discriminatory, retaliatory, harassing and hostile conduct, Plaintiff suffered, and continues to suffer, among other things, mental anguish, emotional distress, loss of enjoyment of life, stress, anxiety and other monetary damages connected with Defendant's aforementioned violations.

50. As a result of Defendant's discriminatory, retaliatory, harassing and hostile conduct, Plaintiff sought, and continues to seek, treatment with a psychiatrist for "ongoing depression and anxiety" related to the discrimination and retaliation he was subjected to at work.

51. Plaintiff's psychiatric treatment is a proximate result of Defendant's continuous actions.

## AS AND FOR A FIRST CAUSE OF ACTION
### Religious Discrimination in Violation of
### Title VII, 42 U.S.C. § 2000e, *et seq*.

52. Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

53. Defendant Mondelez violated Title VII, 42 U.S.C. §2000e, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's religion was the motivating, if not the only factor.

54. As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

55. Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

56. As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### Religious Discrimination in Violation of
### NJLAD, N.J.S.A. §§ 10:5-1 to 10:5-49

57. Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

58. Defendants violated N.J.S.A. §§ 10:5-1 to 10:5-49, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in discriminatory employment practices in which Plaintiff's religion was the motivating, if not the only factor.

59. As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

60. Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

61. As a result of the outrageous and blatantly discriminatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Retaliation in Violation of**
**Title VII, 42 U.S.C. § 2000e, *et seq*.**

62. Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

63. Defendant Mondelez violated Title VII, 42 U.S.C. §2000e, *et seq.*, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in retaliatory actions against Plaintiff for engaging in protected activities, when complaining of the discriminatory, harassing and disparate treatment he was subjected to by Defendants.

64. As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional

distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

65. Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

66. As a result of the outrageous and blatantly discriminatory and retaliatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

### AS AND FOR A FOURTH CAUSE OF ACTION
**Retaliation in Violation of
NJLAD, N.J.S.A. §§ 10:5-1 to 10:5-49**

67. Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

68. Defendants violated N.J.S.A. §§ 10:5-1 to 10:5-49, by engaging in, perpetuating and permitting supervisory and decision making employees to engage in retaliatory actions against Plaintiff for engaging in protected activities, when complaining of the discriminatory, harassing and disparate treatment he was subjected to by Defendants.

69. As a result of Defendants' aforementioned conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

70. Plaintiff continues to suffer and to incur additional damages by reason of the foregoing.

71. As a result of the outrageous and blatantly discriminatory and retaliatory conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Hostile Work Environment

72. Plaintiff repeats, reiterates and re-alleges all prior allegations as though fully set forth herein.

73. The workplace is permeated with discriminatory intimidation, actions, and ridicule based on Plaintiff's religion, retaliatory conduct, intimidation, ridicule, embarrassment, and serious false and fabricated accusations, all of which were sufficiently severe that they altered the conditions of Plaintiff's employment and created an abusive working environment.

74. As a result of Defendants' aforementioned unlawful conduct, Plaintiff has suffered, and continues to suffer, loss of past and future wages and benefits, mental anguish, severe emotional distress, loss of enjoyment of life, and other monetary damages connected with Defendants' aforementioned violations.

75. As a result of the outrageous and blatantly unlawful conduct of Defendants, with such conduct that contravenes public policies and statutes, Plaintiff is entitled to punitive damages.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Muhamet Vinca prays that this Court:

A. award Plaintiff equitable relief of back pay, salary and fringe benefits in an exact amount to be determined at trial;

B. award Plaintiff full compensation damages under Title VII, 42 U.S.C. §§2000e *et seq.*, and NJLAD, N.J.S.A. §§ 10:5-1 to 10:5-49, in an exact amount to be determined at trial;

C. award full liquidated and punitive damages as allowed under Title VII, 42 U.S.C. §§2000e *et seq.*, and NJLAD, N.J.S.A. §§ 10:5-1 to 10:5-49, in an exact amount to be determined at trial;

D. award pre-judgment and post-judgment interests;

E. issue a declaratory judgment declaring that the acts and practices complained of herein are in violation of Title VII and NJLAD;

F. award Plaintiff an amount to be determined at trial for lost compensation, back-pay, bonuses, raises, benefits, emotional distress damages, and additional amounts such as liquidated damages;

G. award Plaintiff such compensatory, prospective, exemplary and punitive damages as this Court deems appropriate, just and proper;

H. award Plaintiff the cost of prosecuting this action and for reasonable attorneys' fees under the aforementioned statutes and 42 U.S.C. § 1988; and

I. such other and further relief as this Court deems just and proper.

Dated: New York, New York
   February 15, 2021

        Respectfully Submitted,

        THE LAW OFFICES OF RUDY A. DERMESROPIAN, LLC

        By: *s/ Rudy A. Dermesropian*
           Rudy A. Dermesropian (RD 8117)
           810 Seventh Avenue, Suite 405
           New York, NY 10019
           Telephone: (646) 586-9030
           Fax: (646) 586-9005
           *Attorneys for Plaintiff Muhamet Vinca*